| | |
|---|---|
| MICHAEL J. REDENBURG, ESQ. PC<br>Michael Redenburg, Esq. (NY #MR4662)<br>11 Park Place, Suite 817<br>New York, NY 10007<br>Telephone: (212) 240-9465<br>Facsimile: (917) 591-1667 | |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVION MURRAY,<br>                    **Plaintiff,**<br>v.<br>CITY OF NEW YORK, NYPD Officer Francis Conejo (Tax ID#954664), NYPD Officer Brian Forshey (Shield #5735), NYPD Officer Dilma Marte (Shield #3427) and NYPD Officer Nadien Nazario (Shield #16704).<br>                    **Defendants.** | **Amended Complaint**<br><br>JURY TRIAL DEMANDED<br><br>15-cv- 6768 (LGS) |

### PRELIMINARY STATEMENT

1. Plaintiff brings this civil rights action against the City of New York and NYPD Officers Francis Conejo, Brian Forshey and Nadien Nazario, alleging that defendants violated his rights under 42 U.S.C. § 1983, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution by falsely arresting him and using unreasonable force against him; and for Dilma Marte's failure to intervene and prevent such conduct. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs and such other and further relief as the Court deems just and proper.

### JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth, Fifth & Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 and §1343.

1

3. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391 (b) and (c) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, Plaintiff resides within this District and because some or all of the defendants reside in this District.

## DEMAND FOR A JURY TRIAL

4. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury in this action.

## PARTIES

5. Plaintiff Avion Murray ("Plaintiff" or "Mr. Murray") is a twenty-five (25) year old African American man who is a resident of Bronx County, in the City and State of New York.

6. The City of New York is a municipal corporation organized under the laws of the State of New York.

7. Defendants Francis Conejo, Brian Forshey, Nadien Nazario and Dilma Marte are members of the New York City Police Department ("NYPD") who were so employed on June 18, 2015. Defendants Francis Conejo, Brian Forshey, Nadien Nazario and Dilma Marte were acting under color of state law and in their capacities as members of the NYPD at all relevant times. Defendants Francis Conejo, Brian Forshey, Nadien Nazario and Dilma Marte are sued in their individual and official capacities.

## STATEMENT OF FACTS

8. The Incident which is the subject of the instant Complaint took place in the late afternoon of June 18, 2015, at or near the corner of 183rd Street and Morris Avenue, Bronx, NY.

2

9. Plaintiff was with his brother, Elijah Murray and they were visiting his brother's friend, Steve.

10. Plaintiff and his brother were waiting outside of Steve's apartment. They were waiting for Steve because they had planned to go play basketball at a nearby park.

11. All of a sudden, two uniformed NYPD Officers, Nadien Nazario and Dilma Marte, approached Plaintiff and his brother and told them that they could not stand in front of Plaintiff's brother's friend's building.

12. Plaintiff and his brother complied with the officers' instructions to move and began walking away.

13. Next, Officers Francis Conejo and Brian Forshey, who were in an NYPD squad car pulled up to the scene and asked Officers Nadien Nazario and Dilma Marte, "What's going on?"

14. Officer Francis Conejo got out of the car and yelled at Plaintiff's brother, "Are you having a good day?"

15. In response to the officer's query, Plaintiff's brother responded, "Yeah, I'm having a good day, except for you guys bothering me."

16. Officer Conejo then got back in the squad car and followed Plaintiff and his brother who had continued walking.

17. Officers Francis Conejo and Brian Forshey then confronted Plaintiff and his brother again, asking Plaintiff's brother, "What did you say?"

18. Officers Francis Conejo and Brian Forshey got out of their car and told Plaintiff and his brother to get against the wall.

19. Plaintiff got against the wall as instructed and said to the officers, "You can't do this, we got rights."

20. Apparently angered by Plaintiff's remark, Officer Conejo began cursing at Plaintiff and told him, in sum and substance, to "take a fuckin' walk."

21. Next, Officer Conejo announced, "Arrest him," speaking of Plaintiff.

22. Officer Forshey grabbed Plaintiff by his right wrist, forcefully twisted his arm up high and behind his back, handcuffing him.

23. Plaintiff was handcuffed and Officer Nadien Nazario punched him in the stomach, then grabbed him by his scrotum and pulled down forcefully, causing Plaintiff pain. Officer Nadien Nazario then sprayed mace into Plaintiff's nose.

24. Now on the ground, with his hands behind his back, the officers began kicking Plaintiff in his stomach and his side, finally punching him in the head.

25. The officers finished by slamming Plaintiff against the back of their squad car.

26. Plaintiff was physically thrown into a police van and taken to the precinct.

27. While in a cell at the precinct, Plaintiff began coughing up blood as a result of the officers' assault upon him.

28. Plaintiff was transported to St. Barnabas Hospital where he was treated and diagnosed with a rib contusion and a head injury.

29. After spending about eight (8) hours at the hospital, being treated for injuries he sustained at the hands of NYPD Officers Francis Conejo, Brian Forshey and Nadien Nazario, he was released and transported to Central Booking.

30. After spending about twenty-one (21) hours at Central Booking, Plaintiff was arraigned on the charges of Resisting Arrest, Obstructing Governmental Administration and Disorderly Conduct.

31. At arraignment, the matter was adjourned in contemplation of dismissal.

32. Plaintiff treated for the injuries he sustained at the hands of the NYPD at G.F.G. Medical, PC, Bronx, NY.

33. As a result of the foregoing, Plaintiff suffered an unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, pain and physical injury – all to his detriment and loss.

## FIRST CLAIM
*Unlawful Search and Seizure*

34. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

35. NYPD Officers Francis Conejo, Brian Forshey, Nadien Nazario and Dilma Marte violated the Fourth and Fourteenth Amendments because they stopped and searched Plaintiff without reasonable suspicion.

36. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein before alleged.

37. As a result of the foregoing, Plaintiff suffered an unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, pain and physical injury – all to his detriment and loss.

## SECOND CLAIM
*False Arrest*

38. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

39. NYPD Officers Francis Conejo and Brian Forshey violated the Fourth and Fourteenth Amendments because they arrested Plaintiff without probable cause to believe that a crime or violation had been committed or was about to be committed.

40. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CLAIM
*Failure to Intervene*

41. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

42. NYPD Officer Dilma Marte was present and observed the unlawful conduct as against Plaintiff; she had an opportunity to prevent such conduct and had a duty to intervene and prevent such conduct- but consciously failed and refused to intervene.

43. Accordingly, NYPD Officer Dilma Marte who failed to intervene violated the Fourth, Fifth and Fourteenth Amendments.

44. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### FOURTH CLAIM
*UNREASONABLE FORCE UNDER 42 U.S.C. §1983*

45. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

46. NYPD Officers Francis Conejo, Brian Forshey and Nadien Nazario violated the Fourth and Fourteenth Amendments when they punched and kicked Plaintiff; and when Officer Nadien Nazario grabbed his scrotum and maced him in the nose. This degree of force was

unreasonable because it was not necessary under the circumstances especially in light of the fact that Plaintiff was unarmed at the time.

47. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the injuries and damages hereinbefore alleged.

## FIFTH CLAIM
### *MONELL CLAIM*

48. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

49. The City of New York is a "person" within the meaning of 42 U.S.C. §1983.

50. The acts complained of were carried out by the aforementioned defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and NYPD, all under the supervision of ranking officers of the NYPD.

51. The City is liable for the damages suffered by Plaintiff as a result of the conduct of their employees, agents, servants, in that, after learning of their employees' violation of Plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy and/or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

52. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of Plaintiff's constitutional rights in this case.

53. In a sixty-two (62) page report issued by the New York City Department of Investigation/Office of the Inspector General ("OIG-NYPD Report") on October 1, 2015, it was concluded that, "Historically, NYPD has frequently failed to discipline officers who use force without justification." (Ex. A, p. 2)

54. The OIG-NYPD Report further found, "NYPD's current use-of-force policy is vague and imprecise, providing little guidance to individual officers on what actions constitute force. NYPD's current use-of-force Patrol Guide procedure, which is barely more than a page of text, is completely silent on what actions constitute "force." The Patrol Guide likewise prohibits "excessive force" while offering no clarity on what constitutes "excessive force." (Ex. A, p. 3)

55. As the OIG-NYPD Report makes clear, it is the Department's failure to discipline its officers that use excessive force without justification that emboldened NYPD Officers Francis Conejo, Brian Forshey and Nadiem Nazario to use excessive force against Plaintiff, causing Plaintiff's physical injuries that required medical attention.

56. The OIG-NYPD Report also found that, "NYPD frequently failed to impose discipline even when provided with evidence of excessive force (Ex. A, p. 47)," which further emboldened NYPD Officers Francis Conejo, Brian Forshey and Nadiem Nazario to use the unreasonable and excessive force they did, when Officer Nadiem Nazario punched Plaintiff in the stomach, grabbed him by his scrotum and sprayed mace up his nose; and when Officers Francis Conejo, Brian Forshey and Nadiem Nazario kicked him in his stomach and side, finally punching him in the head  - causing Plaintiff physical injury, requiring medical attention.

57. The unreasonable force used against Plaintiff is attributable to the, "NYPD's current use-of-force policy [which] is vague and imprecise, providing little guidance to individual officers on what actions constitute force." (Ex. A, p. 3)

58. Within the OIG-NYPD Report (Ex. A, p. 34), it was concluded that, "The Patrol Guide articulates a policy on the need for the application of force to be proportional to the circumstance and imposes an affirmative duty on officers to prevent the unnecessary escalation of force when it appears excessive. However, it does not articulate a policy on the importance of <u>reducing</u> the likelihood that force is needed in a given situation."

59. It is the City's failure to articulate a policy on the importance of reducing the likelihood that force is needed, that led directly to NYPD Officers Francis Conejo, Brian Forshey and Nadiem Nazario's unnecessary force against Plaintiff, which was disproportionate to the circumstances, given that Plaintiff was unarmed.

60. It was the City's failure to train its officers de-escalation, that directly led to NYPD Officers Francis Conejo, Brian Forshey and Nadiem Nazario's use of force against Plaintiff, which was unreasonable, given that Plaintiff was unarmed. The OIG-NYPD Report found that, "there is also too little focus on de-escalation during NYPD's training sessions. NYPD spends only a portion of a four-and-a-half-hour course teaching de-escalation, out of 468 classroom hours- less than one percent of the curriculum." (Ex. A, p. 43-44).

61. The City's custom and practice of failing to instruct its officers to de-escalate encounters with the public, led directly to Officers Francis Conejo, Brian Forshey and Nadiem Nazario's decision to use unreasonable force against Plaintiff on June 18, 2015. As the

OIG-NYPD Report found, "The NYPD's Patrol Guide does not properly instruct officers to de-escalate encounters with the public." (Ex. A., p. 3).

62. The Incident that Plaintiff complains of is not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of the City's police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obvious illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

63. In addition, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

64. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following-up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

65. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions.

66. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate Plaintiff's civil rights without fear of reprisal.

67. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

68. As a result of the foregoing, Plaintiff suffered an unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, pain and physical injuries – all to his detriment and loss.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

a. Compensatory damages against all defendants, jointly and severally;

b. Punitive damages in an amount to be determined by a jury;

c. Reasonable attorneys' fees and costs; and

d. Such other relief as this Court shall deem just and proper.

Dated:  February 2, 2016
          New York, NY                              _____/s/_____
                                                    Michael J. Redenburg (NY #MR4662)
                                                    MICHAEL J. REDENBURG, ESQ. PC
                                                    11 Park Place, Suite 817
                                                    New York, NY 10007
                                                    mredenburg@mjrlaw-ny.com
                                                    1-212-240-9465 (Phone)
                                                    1-917-591-1667 (Fax)