UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
AVION MURRAY,                                                :
                          Plaintiff,   :
                                                             :  15 Civ. 6768 (LGS)
          -against-                                         :
                                                             :  **OPINION AND ORDER**
CITY OF NEW YORK, et al.,                                    :
                         Defendants.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Avion Murray brings this action against Defendant Police Officers Francis Conejo, Brian Forshey, Dilma Marte and Nadine Nazario for false arrest, unlawful search and seizure and excessive force in violation of 42 U.S.C. § 1983.[1] Defendants move for summary judgment. For the following reasons, Defendants' motion is denied.

## I. BACKGROUND

      The following facts are drawn from the evidence submitted by the parties in connection with Defendants' motion. For purposes of this Opinion, all factual disputes are resolved, and all reasonable inferences are drawn, in Plaintiff's favor. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016).

### A. The Arrest

      On June 18, 2015, Plaintiff Avion Murray and his brother Elijah Murray ("Elijah") quietly waited for their friend Steve outside an apartment building so that they could play basketball together in a nearby park. While Plaintiff and Elijah were waiting, they were approached by two female police officers, Officers Marte and Nazario, who told them to walk

---

[1] Plaintiff previously agreed to voluntarily dismiss his claim against the City of New York, which is hereby terminated from this action.

away. Elijah informed the officers that their friend was coming downstairs, and the officers told them to leave anyway. Plaintiff noticed a sign on the building stating "NYPD Patrol, no loitering," and told Elijah that they should leave. Plaintiff and Elijah complied with the officers' request and walked toward the park. They did not have any other communication with the female officers. As Plaintiff and Elijah began to walk away, Steve came out of the building.

At some point after Plaintiff and Elijah began to walk away from the building, a police vehicle pulled up. A male officer exited the vehicle. Elijah recognized the male officer as Officer Conejo because Officer Conejo has given Elijah "plenty of tickets" for not having photo identification and arrests Elijah whenever he sees him. Officer Conejo spoke to Officers Marte and Nazario. Officer Conejo then shouted out, "Hey, Elijah Murray. Are you having a good day?" Elijah responded that he was having a good day with the exception of the police bothering them.

By this point, Plaintiff and Elijah were close to the park where they intended to play basketball. Officer Conejo returned to his vehicle, but Plaintiff noticed that the vehicle was following them as they walked to the park. When Plaintiff noticed that he and Elijah were being followed, Officer Conejo and his partner Officer Forshey jumped out of the vehicle and told Elijah and Plaintiff to "get on the wall." Officer Conejo slammed Elijah up against a wall, and began to harass him, asking for Elijah's identification and also saying that he knew Elijah had none. Officer Forshey had Plaintiff up against the same wall.

Elijah and Plaintiff repeatedly asked why they were being detained. Plaintiff further stated that he and his brother had rights. As he questioned why they were being detained, Plaintiff noticed the female officers walking toward them. Officer Conejo told Plaintiff, "Take a fucking walk." Plaintiff responded, "Take a fucking walk. Make me take a fucking walk."

Immediately thereafter, Officer Conejo said, "Arrest him." Officer Forshey put one handcuff on Plaintiff, punched Plaintiff in the chest and pushed Plaintiff into an alley.

In the alley, Officer Nazario punched Plaintiff in the stomach. Plaintiff responded that he trained as a boxer, and that if she was looking to hurt him, punching would not do it. Officer Nazario responded, "Do you want me to punch you in the face?" While Officer Nazario punched Plaintiff, Officer Marte threatened to mace Plaintiff. Elijah told the police not to mace Plaintiff because Plaintiff has asthma. The officers had Plaintiff's hands behind his back, pushed Plaintiff up against the wall of the alley and continued to strike him. The officers punched Plaintiff four or five times, including two or three times in the stomach and several times in the back. At a certain point, one of the female officers reached into Plaintiff's pants and "pulled down on [his] scrotum." One of the female officers also told Plaintiff to "stop resisting," but Plaintiff was not resisting arrest.

After two minutes of being punched, one of the female officers maced Plaintiff in the nose. Plaintiff got down on the ground and was kicked hard in the stomach by one of the officers. He felt two knees on his back, followed by another knee on his back. In that moment, he could not breathe. Plaintiff was placed in handcuffs while on the ground. He was then hit in the head as he was being brought up from the ground and pushed against the wall. Plaintiff felt dizzy and had blurry vision following the blow to his head, and Officer Forshey asked if Plaintiff was alright.

Elijah could hear Plaintiff screaming from the alley, and heard outside observers asking why the police were hitting Plaintiff. Elijah also heard Plaintiff yell out that the police were grabbing his penis.

After Plaintiff was handcuffed, he was taken to a police vehicle, where two unidentified

3

police officers lifted him into the air and slammed him into the vehicle.  He hit the side of his stomach, in the rib area.  The officers then lay Plaintiff down inside the vehicle, sat Plaintiff up and drove Plaintiff to the 79th Precinct.

Defendants have provided video footage of a portion of this incident.  The video starts after the beginning of Plaintiff's interaction with the police, and stops before its conclusion.  The video initially shows Plaintiff, Elijah and two male police officers standing near a wall.  One male police officer touches Elijah on the arm, while Plaintiff appears to take a slight step toward the officers.  Plaintiff twice says, "Make me shut the fuck up."  One of the male officers then pushes Plaintiff several times and takes him into the alley.  At this point, two female police officers arrive, and the video depicts one of the male officers attempting to place handcuffs on Elijah.  Elijah is instructed to turn around, and is told that he is "under arrest," to which Elijah responds, "For what?  What am I under arrest for?"  One male and one female officer place handcuffs on Elijah.  Plaintiff is off screen during this entire exchange.

The video then switches from Elijah to Plaintiff, who is in the alley being restrained by one male and one female police officer.  The video switches back to Elijah, and shows a female police officer walking away from Elijah and entering the alley while putting her hand in front of the camera.  At this point, a male police officer moves a handcuffed Elijah toward the alley.  The video again switches from Elijah to Plaintiff, and shows three police officers engaged in a struggle with Plaintiff inside the alley.  From the video, it is not clear whether Plaintiff is resisting the police officers, whether the officers are beating him or both.  At a certain point, it appears that a female police officer is hitting Plaintiff in the abdomen.  The video ends with Plaintiff still in the alleyway, held by three police officers.

4

### B. Post-Arrest Injuries and Treatment

Once at the 79th Precinct, an Emergency Medical Technician ("EMT") flushed out Plaintiff's eyes. Plaintiff had a headache, his side hurt and his scrotum was sore. He had trouble walking, and when the EMT flushed his eyes, Plaintiff's ribs hurt so much that he could not lift his head properly. After Plaintiff attempted to use the bathroom but could not do so, he asked for an ambulance. Plaintiff was taken to St. Barnabas Hospital. He was dizzy and his nose burned from the mace. Plaintiff complained to hospital staff that he was experiencing groin, head, wrist and side pain. When asked about the cause of his rib pain, Plaintiff speculated that it came from being slammed against the police vehicle. Hospital staff performed a computerized tomography ("CT") scan on Plaintiff's head, an X-ray of Plaintiff's ribs and an ultrasound on Plaintiff's scrotum. Staff also briefly examined Plaintiff's eyes and nose, but did not conduct any tests as they found nothing wrong.

Drawing all reasonable inferences in Plaintiff's favor, Plaintiff was diagnosed with a rib contusion and head injury. Hospital staff also noted abrasions on Plaintiff's right shoulder. Testing on Plaintiff's scrotum found "tenderness upon palpation of right testicle with no noted trauma to scrotum or penis," and hospital medical records state that a "diagnosis of torsion [is] unlikely." Hospital records state that Plaintiff had "no abnormalities in voiding [his] bladder" as of June 19, 2015, at 6:47 a.m.

Plaintiff was taken from St. Barnabas to Central Booking, where he was seen by a medical technician and completed a pre-arraignment screening form. On the form, Plaintiff stated that he went to St. Barnabas Hospital after his arrest because he felt dizzy, had headaches and had shoulder pain. He also checked a box answering "No" in response to the question, "Are you sick or injured?" At his arraignment, there was no bail set and Plaintiff was told to stay out

of trouble for 60 days.

Plaintiff was bedridden for a week after the incident. Several days after the incident, Elijah saw bruising on Plaintiff's ribs, collarbone and genital area. Elijah also saw swelling on Plaintiff's face and arms. Plaintiff still had visible bruises and difficulty moving and breathing several months after the incident. He could no longer train as a boxer, and had to stop working in his job as an equipment mover. As of his deposition in August 2016, Plaintiff testified that he still gets shortness of breath depending on how long he exercises, has pain when he breathes heavily and can get sore when he twists toward his left.

In September 2016, Plaintiff was seen by Dr. Nunzio Saulle, who examined Plaintiff and recommended physical therapy for "exquisite tenderness anterior to the anterior axillary line over the lower ribs" and a CT scan to "rule out an occult fracture or other pathology as a cause of the ongoing pain and tenderness." Dr. Saulle's notes include a section entitled "History of Present Illness," which states that Plaintiff "was assaulted by the police and placed in handcuffs and then thrown in the back of a squad car when he struck his left ribs," and a section entitled "Causality," which states that "[i]f the events described above are accurate, then the accident which occurred on June 18, 2015 is causally related to the patient's injury as described above." In November 2016, Plaintiff had a CT scan of his abdomen and pelvis due to continued abdominal pain. The CT scan showed "no acute findings."

## II.   STANDARD

Summary judgment is appropriate when the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins.*

*Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58–59 (2d Cir. 2016). Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 255; *Wright*, 831 F.3d at 71–72.

## III. DISCUSSION

Plaintiff brings a claim for false arrest against Officers Forshey and Conejo; a claim for unlawful search and seizure against Officers Forshey, Conejo, Nazario and Marte; and a claim for excessive force against Officer Nazario.[2]

### A. False Arrest

"In analyzing § 1983 claims for unconstitutional false arrest, [the Second Circuit] generally look[s] to the law of the state in which the arrest occurred." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016). "Under New York law, a false arrest claim requires a plaintiff to show that the defendant intentionally confined him without his consent and without justification." *Id*. (citation omitted). Probable cause "is an absolute defense" to an action for false arrest brought under Section 1983. *Id*. Probable cause "exists when the [arresting] officers

---

[2] Plaintiff previously agreed to dismiss his excessive force claim against Officers Conejo and Forshey. Though both Plaintiff and Defendants assume in their motion papers that Plaintiff brought an excessive force claim against Officer Marte, no such claim is alleged in the Amended Complaint.

7

have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016) (alteration in original); *accord Kass v. City of New York*, --- F.3d ----, 2017 WL 3122289, at *3 (2d Cir. July 24, 2017). Probable cause is determined based on the facts known to the arresting officer at the time of the arrest. *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016). "Where an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Mitchell*, 841 F.3d at 77 (citation omitted).

Here, Plaintiff has adduced evidence from which a reasonable jury could find that Defendants lacked probable cause for his arrest. Plaintiff was walking to a park to play basketball when Officers Forshey and Conejo stopped him and forced him to stand up against a wall. Plaintiff had not done anything wrong, and had quickly complied with a request by other officers to move from the spot where he was waiting for a friend to come downstairs. These facts, while disputed, are supported by Plaintiff's testimony and corroborated to some extent by the video.

Defendants argue that they had probable cause to arrest Plaintiff for obstruction of governmental administration under New York Penal Law § 195.05. A person may be found guilty of obstructing governmental administration when "(1) a public servant is performing an official function; (2) the individual prevents or attempts to prevent the performance of that function by interfering with it; and (3) the individual does so intentionally." *Kass*, 2017 WL 3122289, at *4. To satisfy the first element of the test, the official function performed by the public servant must be "authorized by law." *Id.* To satisfy the second element of the test, an

8

individual's "interference" with the "lawful official function" must "at least in part be 'physical' and cannot consist solely of verbal statements." *Id.* at *6 (citation omitted). To satisfy the third element of the test, an individual must intend to prevent the public servant from performing the official function. *See id.* Because of the "practical restraints on police in the field . . . with respect to ascertaining intent," the police officers are accorded considerable "latitude . . . considering the probable cause issue in the context of mens rea crimes." *Id.*

Construing all facts and drawing all inferences in Plaintiff's favor, Officers Conejo and Forshey did not have probable cause to arrest Plaintiff for obstruction of governmental administration on June 18, 2015. First, Plaintiff has adduced evidence from which a reasonable jury could find that Plaintiff did not interfere with Elijah's arrest. Plaintiff testified that he repeatedly asked why he and his brother were being detained, was told by a police officer to leave, repeated the officer's statement and was immediately informed that he (Plaintiff) would be arrested. The video evidence shows Plaintiff being taken into the alleyway *before* Officer Conejo informs Elijah that he (Elijah) is under arrest, and *before* any handcuffs are placed on Elijah. A reasonable jury could rely on Plaintiff's testimony and the video evidence to find that Plaintiff did not attempt to obstruct Elijah's arrest, as Elijah was not under arrest or being placed under arrest at the time Plaintiff inquired as to why they were being detained.

Second, a reasonable jury could find that Plaintiff was not obstructing governmental administration because, even if Plaintiff was attempting to interfere with Elijah's arrest, the arrest was not "authorized by law." *Id.* at *4. A police officer does not have probable cause to arrest an individual for obstructing governmental administration by interfering with the arrest of a third party where the officer knows that he lacks probable cause to arrest the third party. *See Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010). Accepting Plaintiff's version of

9

the facts, Officer Conejo has a history of arresting Elijah whenever he sees him, and followed that pattern by harassing and arresting Elijah without cause on June 18, 2015. A reasonable jury could find that Officer Conejo knew that he lacked probable cause to arrest Elijah, and therefore that any action on the part of Plaintiff to interfere with the unlawful arrest did not obstruct governmental administration. Consequently, Defendants are not entitled to summary judgment based on the argument that they had probable cause to arrest Plaintiff.

In the alternative, Defendants argue that Officers Forshey and Conejo are entitled to qualified immunity on Plaintiff's false arrest claim. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted). An officer is entitled to qualified immunity for a false arrest claim in the absence of probable cause so long as the officer had "arguable probable cause" for the arrest. *See Amore v. Novarro,* 624 F.3d 522, 536 (2d Cir. 2010). "A police officer has arguable probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Figueroa*, 825 F.3d at 100 (citation omitted); *accord Kass*, 2017 WL 3122289, at *3. "Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Barksdale v. Colavita*, 506 F. App'x 82, 85 (2d Cir. 2012) (summary order) (quoting *Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir. 1999)).

As explained above, Plaintiff's version of events does not support a finding that Plaintiff obstructed Officers Forshey and Conejo, nor does it support a finding that a reasonable officer could have believed that Plaintiff was obstructing Officers Forshey and Conejo. Thus, the facts

10

in dispute are "material to a determination of reasonableness" and summary judgment on qualified immunity grounds is inappropriate. *See id.*; *see also, e.g.*, *Forde v. City of New York*, No. 12 Civ. 1547, 2014 WL 583163, at *3 (E.D.N.Y. Feb. 12, 2014) (denying summary judgment where officer's conduct "would not be shielded by qualified immunity . . . if a jury credits plaintiff's version of events and finds that [officer] knowingly disregarded plaintiff's rights"). Defendants' motion for summary judgment is consequently denied as to Plaintiff's false arrest claim.

### B. Unlawful Search and Seizure

The Fourth Amendment to the United States Constitution protects the right to be secure "against unreasonable searches and seizures." U.S. Const. amend. IV. "Its touchstone of reasonableness imposes limits on the Government's seizure powers to 'prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *Dancy*, 843 F.3d at 105 (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)). Under the Fourth Amendment, an officer may conduct a "brief investigatory detention" as long as the officer has "reasonable suspicion that the person to be detained is committing or has committed a criminal offense." *United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016) (citation omitted). Reasonable suspicion requires more than an "inchoate suspicion or mere hunch." *Dancy*, 843 F.3d at 106 (citation omitted). "It demands specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting legal wrongdoing." *Id.* (citation omitted). "A seizure of a person that rises to the level of an arrest is unreasonable if it occurs without a warrant unless the arresting officers have probable cause to believe that the

person has committed a crime." *Annunziata v. City of New York*, 575 F. Supp. 2d 491, 495 (S.D.N.Y. 2008); *accord Jaegly v. Couch,* 439 F.3d 149, 150 (2d Cir. 2006) (Sotomayor, J.).

Here, as explained above, a reasonable jury could find that at the time Plaintiff was arrested, the officers lacked probable cause to arrest or detain him. Thus, Defendants' motion for summary judgment is denied as to Plaintiff's search and seizure claim. *See Dancy*, 843 F.3d at 108–10 (summary judgment inappropriate where stop was not justified at its inception because police officer had no reasonable suspicion that plaintiff had committed a crime).

### C. Excessive Force

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use *some degree* of physical coercion or threat thereof to effect it." *Soto v. Gaudett*, --- F.3d ----, No. 15-3764, 2017 WL 2854323, at *6 (2d Cir. July 5, 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). However, police officers may not use "excessive force in making an arrest." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015); *accord Soto*, 2017 WL 2854323, at *6. Whether the force used in such an arrest is "excessive is . . . analyzed under [the Fourth] Amendment's 'reasonableness' standard." *Brown*, 798 F.3d at 100. Courts look to three factors in determining the objective reasonableness of the force used by an officer in making an arrest: (1) the "severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others" and (3) "whether the suspect is actively resisting arrest or attempting to flee." *Brown v. City of New York*, --- F.3d ----, No. 16-1258-CV, 2017 WL 2854333, at *2 (2d Cir. July 5, 2017) (citing *Graham*, 490 U.S. at 396).

Accepting Plaintiff's version of the facts, Plaintiff had not committed any crime and was not resisting arrest when he was repeatedly punched by Officer Nazario. Officer Nazario may

12

also have pulled Plaintiff's scrotum, kicked him while he lay on the ground and/or hit him in the head while he was in handcuffs. Based on the *Graham* factors, a reasonable jury could find that Officer Nazario's conduct while arresting Plaintiff was objectively unreasonable. *See id.* (outlining *Graham* factors); *compare Simcoe v. Gray*, 577 F. App'x 38, 40 (2d Cir. 2014) (summary order) (summary judgment inappropriate where plaintiff testified that he did not resist arrest and was assaulted after being handcuffed), *with Brown*, 2017 WL 2854333, at *7 (officers did not violate plaintiff's Fourth Amendment rights where they kicked plaintiff, pushed her to the ground and repeatedly used pepper spray after plaintiff repeatedly refused to comply with police instructions to place her hands behind her back).

Defendants argue that summary judgment is appropriate as to Plaintiff's excessive force claim because (1) any injury to Plaintiff was *de minimis*, which indicates that minimal force was used, (2) the use of force was reasonable in light of the totality of the circumstances surrounding Plaintiff's arrest and (3) Plaintiff's rib contusion was not caused by Officer Nazario but instead was caused when unidentified police officers slammed Plaintiff against a police vehicle. These arguments are unavailing.

First, although Defendants argue that Plaintiff's injuries were *de minimis*, Plaintiff has adduced facts sufficient to show that he suffered an immediate injury -- according to medical records, a rib contusion, head injury, abrasions and a tender testicle -- and he may have suffered a more lasting rib injury affecting his ability to work. Moreover, even if a jury found that Plaintiff's injuries were temporary, the jury could still hold Officer Nazario liable for excessive force based on the *Graham* factors discussed above. While a *de minimis* injury might be evidence that an officer did not use excessive force, *see Ferebee v. City of New York*, No. 15 Civ. 1868, 2017 WL 2930587, at *8 (S.D.N.Y. July 6, 2017), a *de minimis* injury does not always

defeat an excessive force claim. An officer may still be liable for the use of excessive force if she "gratuitously inflict[s] pain in a manner that [is] not a reasonable response to the circumstances." *See Phelan v. Sullivan*, 541 F. App'x 21, 25 (2d Cir. 2013) (summary order) (quoting *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 124 (2d Cir. 2004)) (finding that district court erred in dismissing excessive force claim due to allegedly *de minimis* injuries where plaintiff alleged that defendants punched, kicked and beat him during arrest, and that defendants' actions nearly broke plaintiff's arm).

Second, a reasonable jury could rely on Plaintiff's testimony, Elijah's testimony and the video evidence to find that Officer Nazario punched Plaintiff, kicked him and pulled on his scrotum and that that such conduct was unreasonable under the circumstances in light of Plaintiff's testimony that he was not resisting arrest.

Third, Defendants' alternate theory for the cause of Plaintiff's rib injury does not entitle them to summary judgment on Plaintiff's excessive force claim. As explained above, a reasonable jury could find that Officer Nazario used excessive force, regardless of the cause of Plaintiff's rib injury. Plaintiff has also adduced evidence from which a reasonable jury could find that Officer Nazario *was* responsible for his rib injury. Plaintiff testified that Officer Nazario repeatedly punched him in the abdomen and may also have kicked him in the abdomen. Though Plaintiff also testified that he was slammed into a police vehicle and speculated that he might have injured his ribs at that point, a reasonable jury could rely on Plaintiff's testimony to conclude that Officer Nazario caused Plaintiff's rib injury. Dr. Saulle's notes do not contradict such a finding; Dr. Saulle states both that Plaintiff was beaten and thrown against a vehicle, and that the general incident caused Plaintiff's injury. He does not conclusively opine that the injury was caused when Plaintiff hit the vehicle. At a minimum, Plaintiff has raised a genuine issue of

material fact as to the cause of his rib injury.

As a reasonable jury could find that Officer Nazario acted with excessive force in arresting Plaintiff, summary judgment is inappropriate on Plaintiff's excessive force claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to close the motion at Docket Number 56 and terminate the City of New York as a Defendant in this action.

Dated: August 2, 2017
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**